## M. GREGG v. W. C. ENGLISH.

1. Where time is not of the essence of the contract for sale of land, the mere failure to pay the purchase money will not be held a repudiation of the contract, so as to authorize suit by the vendor for the recovery of the land.

2. The vendor in an executory contract for sale of land should tender a deed and make demand of the purchase money before suing for the land against his vendee.

APPEAL from Fannin. Tried below before the Hon. W. H. Andrews.

On the ninth of May, 1870, Milton Gregg filed his suit against W. C. English in trespass to try title to six hundred and forty acres, the headright of plaintiff. The defendant plead purchase from the plaintiff of two tracts of land, parts of the tract sued for, one of one hundred and seventy-five acres (the consideration for which he alleged and proved had been received by the plaintiff), the other of three hundred and forty-seven acres, for which he held the title bond of the plaintiff of date of thirtieth of May, 1855. Defendant tendered the balance of the purchase money upon the larger tract into court, and, excusing his delay, plead that no title deed had been tendered him by the plaintiff. The plaintiff, in replication, alleged that defendant had repudiated the contract of purchase.

On the trial plaintiff showed patent to the land, which included the land in controversy.

The defendant read the bonds, one for one hundred and seventy-five acres and the other for three hundred and forty-seven acres, the condition in which was: "Now, if I make, or cause to be made, a good and lawful title, so soon as the government makes a title to the same, then this obligation to be null and void, otherwise to stand in full force and effect."

The defendant tendered in court the amount due on the notes for the purchase money, said notes being of same date with the title bond for the 347 acres. The plaintiff had never tendered to his vendee a deed for the land. Judgment for defendant for the land, and plaintiff appealed.

*Hare & Bledsoe*, for appellant.—In a suit for the rescision of a contract, the plaintiff must be willing to place the defendant in *statue quo*, but not so where the contract has already been put to an end by the disaffirmance or repudiation of it by defendant. It is not now an open question that whenever the vendee disaffirms his contract he becomes a trespasser, and the vendor is then entitled to bring his action of ejectment. (Browning v. Estes, 3 Texas, 474; and same case, 11 Texas, 242, and cases there cited; Todd v. Caldwell, 10 Ib., 236.)

In a case where the vendee simply fails to pay the purchase money, or the suit is for a rescision of the contract, it would be necessary for the vendor to execute a deed and tender it, and demand the payment of the purchase money. But this is not necessary where the contract has been disaffirmed or repudiated by the vendee. (Fullerton v. Doyle, 18 Texas, 3; and Walker v. Emerson, 20 Ib., 711.) Gregg had done all that he was required to do in this case. He had written to English that he was in a condition to perform his part of the contract; that the patent had been obtained, and for English to pay the money, which English not only refused to do, but declared that he never intended to pay him anything, and besides this, threatened him with a lawsuit if he refused to make him a title without any further payment.

The court below seems not to have made a proper distinction between those cases where notice to quit the possession was necessary and where the vendee himself had

forfeited his right to any notice or tender of deed or demand for the purchase money. (Secrest v. Jones, 21 Texas, 132; Gregg v. Von Phul, 1 Wallace, 282; Baker v. Lessee of Giddings, 16 Ohio, 489.) "In an executory contract of purchase, the possession is originally rightful, and it may be that until the party in possession is called upon to restore it he cannot be ejected without a demand or notice to quit. But the vendee can forfeit his right of possession, and if he fails to comply with the terms of the sale, his possession afterwards is tortious, and there is an immediate right of action against him. It would be an idle ceremony to demand possession when to a previous demand for the money due on the contract of purchase the vendee refused to respond. This refusal, unaccompanied by any promise to pay the money at a future day, was equivalent to a direct notice to the vendor that the vendee declined to execute the contract." (See cases above cited.)

The defendant seems to have rather a strange idea of dependent and independent covenants, where the notes for the sale of land are payable at a fixed day, and the vendor agrees to make title at some future day. He seems to think that he would be relieved from the payment of the purchase money until the latter event had transpired. In the case of Taul v. Bradford, 20 Texas, 263, the court says, "That a covenant, on the part of the vendee, to pay the purchase money at a particular date, and of the vendor to convey at some indefinite period, as for instance after a patent is obtained from the government, are not dependent upon each other, and the purchaser must pay the money when due and rely upon the covenant of the agreement for his remedy." This explains what is meant by independent agreements, and is believed to be in direct conflict with the charge given by the court.

In the case of Scarborough v. Arrant, 25 Texas, 129,

which is relied on by the defendant, there was a mere failure to pay the purchase money, and no demand had been made, and no act had been done by the vendee indicating an abandonment or disaffirmance of the contract. It is submitted that in that case, if the vendee had written a letter to his vendor, that he "did not aim to pay" any of the purchase money after a demand on the part of the vendor, and had set up title in himself, or, in other words, had been guilty of one-half of the acts of repudiation of his contract evinced by English in the case at bar, the court would have withheld any relief from him. The notes in this case were due at a certain day. One of them stipulated that the consideration could be discharged in young cattle. But the defendant having let the day of payment pass without performance on his part, or an attempt to do so, it became a moneyed demand, and Gregg was under no obligation to receive the payment of the note in anything else than money. (2 Parsons on Contracts, 1 Ed., 163; Hemming v. Zimmerchitte, 4 Texas, 159; Baker v. Todd, 6 Ib., 273.) And the fact that Gregg did not receive cattle in discharge of the note after due, was no justification to English for not paying the money.

As to whether time was of the essence of the contract, relates only to those cases in which the vendee failed to pay the purchase money. It being or not being of the essence of the contract at the making of the contract, can have nothing to do with a case in which the contract was repudiated by him. But even if it were admitted that the determination of that question was essential in this case, we would only have to refer to the doctrine laid down in the case of Edwards v. Atkinson, 14 Texas, 377 and 378, and apply it to the statement of facts in this case, for a proper solution of it. In that case the court say: "Where default is made, payment of interest on the

purchase money would be comparatively but a slight compensation to the vendor for the loss of the increased value in the land, and of the use of the money in the purchase of other lands or property which is augmenting in value or price." The remarks of the learned judge in that case, with reference to the rapidly increasing value of land in this State, apply with peculiar force to the case at bar. According to the statement of English, he only paid sixty dollars, and the two notes for the 347 acres of land, which, from the testimony of all the witnesses, was worth, at the time of trial, from five to eight dollars per acre. The sum tendered into court by English in this case was but a small compensation for the use of the money during the time which had elapsed since it was due, or for the land, considering its increased value. The attention of the court is also called to the fact that even after the suit was instituted, it was about two years before the money was tendered into court, and then tendered in United States currency, which was not equal in value to the kind of money in the original contract.

While we are free to admit that the money tendered is sufficient to pay a specie debt in a court of law, but when English, by his cross-action, seeks specific performance in a court of equity, he cannot be allowed to take advantage of legal technicalities, but must do conscientiously what he had contracted to do. He must be "ready, desirous, prompt and eager to perform the contract." (Story's Eq. Jur., § 776.) Not some other contract, but the one in question, according to the principles of honesty and fair dealing. In courts of equity legal technicalities and advantages are regarded with no favor. The question is, when a party seeks relief upon equitable principles he must show to the court that he was or is willing to do all that was required of him by his contract, according to the true intention and spirit of it at the time it was made. It

is believed also that the court erred in permitting any proof of tender, as the defendant had plead the general denial and relied on it. The effect of a plea of tender is too well understood to merit any comment. (Sayles' Pleading, Sec. 76; 2 Greenl. Ev., Sec. 600; Brock v. Jones, 16 Texas, 467.) It is true under our system the defendant may plead as many separate defenses as he thinks fit, so they are filed in due order of pleading. This rule relates to those defenses which tend to defeat the action of the plaintiff, and not to such as confess it. (Hillebrant v. Booth, 7 Texas, 500; Smith v. Sublett, 28 Id., 163.)

We believe under the proof that the plaintiff was entitled to a judgment for the 347 acres of land. We would therefore ask that the court here reverse and reform the judgment of the court below, so that the ends of justice be attained and further litigation in regard to this tract of land cease.

*R. W. Campbell*, for appellee.—Is time of the essence of the contract? Time is only of the essence of the contract when it is made so by the stipulations of the parties.

In Edwards v. Atkinson, 14 Texas, 373, is an instance of a bond for title, in which time was of the essence of the contract. Is it similar to this? The bond in this case reads, "Now if I make or cause to be made a good and lawful title so soon as the government makes a title to the same." The condition was, to make title when the land was patented. In that case, time was of the essence of the contract; in this case it is not. In the case above cited the vendor had to perform his part strictly, because he had so stipulated to do. There his title was dependent upon his performance. In this case there was no such agreement. Gregg bound himself in the penal sum of eight hundred dollars to make title as

soon as he obtained one from the State.  Was it depend-
ent upon the payment of the purchase money?  Not at
all; nothing was said about the money, nothing was said
about the payment in the bond.  It is argued that the
notes and bonds form part of the same contract, and
must be construed together.  This is true in some cases,
and for some purposes.  In this case it proves too much
for appellant; the notes fell due in 1855 and 1856, and
patent issued in 1862.  Suppose that English, in 1856,
had paid the notes and sued Gregg for the penalty of the
bond.  He could not have enforced it, because no patent
had been obtained, and the courts would have allowed
him a reasonable time to get a patent.

Then, taking the bond and the notes as parts of the same
contract, here would have been one part that could be en-
forced and another part that could not be enforced at the
same time, which proves that the court below was correct
in the charge, i. e., that the notes and the bond for the
title contained independent obligations.  The obligation
of the notes was to pay at their maturity; the obligation
of the bond was to make a deed when the patent was ob-
tained.  As the judge below correctly observed in his
charge, English could not, in a suit against Gregg, have
enforced specific performance without performing his part,
because before he could ask equity he must do equity;
and in a suit of Gregg v. English the same rule holds
true.  Nothing short of a total and continued abandon-
ment on the part of English would enable Gregg to
rescind, and then only after Gregg had offered to do all
that law or equity demanded at his hands.

There are, as before remarked, two classes of contracts
for the sale of land, when bonds for title are given.  One
is where time is of the essence of the contract, and the
other is where time is not of the essence of the contract.
An example of the first kind is in Edwards v. Atkinson,

14 Texas, 373, cited by appellant. There the consideration of the contract was that the vendee would, until the faithful performance of the agreement according to the letter and terms thereof, consider himself rentor or lessee of the vendor, covenanting, in case of his failure to comply faithfully with the agreement, according to the true spirit and meaning thereof, to deliver up the land, with all the improvements thereon, to the vendor, without charge, let or hindrance of any kind whatsoever, at the expiration of three years, and lose what money he had paid and work he had already done, etc. In this case, by the stipulation of the parties, the vendor had no rights unless he performed his part of the contract to the letter, and it is generally true that when time is of the essence of the contract, strict performance is required, and the court will note the fact that nearly all of the cases cited by appellant are of this character. The present case at bar is as strong an example as could possibly be given where time is not of the essence of the contract. In Scarborough v. Arrant, 25 Texas, 131, the court held that time was not of the essence of the contract, although the condition was that title should be made upon the payment of the money. In the case at bar the making of the title was contingent upon Gregg obtaining patent. Nor do I presume that it will be asserted by appellant that time was originally of the essence of the contract. Then, if time was not originally of the essence of the contract, under what circumstance could Gregg treat the contract as abandoned, or could he do so at all? If he could do so at all, it would only be upon the total and continued repudiation of the contract by English. Mere failure to perform is not sufficient. Where there is any stipulation that the contract shall become null and void upon default, courts of equity will look to the substance and not to the form. (Primm v. Barton, 18 Texas, 222.) Nor will the

court construe the contract so as to forfeit the equitable interest, unless clearly indicated by the agreement of the parties. (Hill v. Still, 19 Texas, 84.) At law, when time is of the essence of the contract, or where the contract consists of dependant covenants, strict performance is required, but not so in equity. Equity dispenses with that which would make compliance with what the law requires oppressive, and the failure of one party to perform does not put an end to the contract so as to make it void. It gives the other party the right to rescind or waive the default and continue the contract, and when the right has been exercised it places the rights of the parties on a new basis. (Scarborough v. Arrant, 25 Texas, 134.) If the vendee repudiates his contract, the vendor can, by offering to perform his part, and on the continued refusal of the vendee, have the contract rescinded. And here let us inquire, what must the vendor do before he can rescind?

*First.* He must demand payment and give notice of his intention to rescind, upon refusal. (Scarborough v. Arrant, 25 Texas, 134; Secrest v. Jones, 21 Texas, 121; Hill v. Still, 19 Texas, 76.)

*Second.* He must tender deed. (2 Hilliard on Vendors, 71, *et seq.*; 1 Hilliard on Vendors, p. 443, Secs. 40, 41, pp. 183, 33; Perry v. Rice, 10 Texas, 367; Walling v. Kennard, Ib., 511.)

*Third.* When a part of the purchase money has been paid, the vendor must return it before he can rescind. (Thomas v. Benton, 25 Texas Sup., 321.)

The plaintiff in this case never even demanded payment in the proper manner. The only evidence is that Gregg wrote English a letter in 1862, but it could hardly be expected that English would travel all the way to Gregg, in Titus county, to make a payment when he did not know whether Gregg would make him a deed to the land. This,

I suggest, was no such demand as the law requires. He should have presented the notes and demanded the money, and he should have tendered a deed to the land at the same time. Unless he tendered a deed, English had a perfect right to refuse to pay the notes, if they had been presented. (Perry v. Rice, 10 Texas, 367, above cited.)

WALKER, J.—We think the verdict and judgment in this case right upon every principle of law and equity. Gregg was in no condition to avoid his contract with English.

It does not appear that time was of the essence of the contract. No doubt he could have brought suit and recovered on the notes at their maturity, but the time fixed for making the deed was indefinite.

The deed was to be made after the patent issued, but the precise time in which it was to be made does not appear to have been fixed by the parties.

Gregg should at least have tendered a deed before he could rescind the contract.

English having tendered the purchase money into court, was entitled to specific performance of the contract.

The judgment of the District Court is therefore affirmed.

AFFIRMED.